IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03259-BO

| | | |
|---|---|---|
| LARRY JUNIOR MERIS, Plaintiff, | ) | |
| v. | ) | ORDER |
| DOMANICK SMITH, STEPHEN FONVILLE, and CORRECTIONAL DELMAR HOLDER, Defendants. | ) | |

Larry Junior Meris ("plaintiff"), a state inmate, filed this civil rights action, pro se, pursuant to 42 U.S.C. § 1983. The matter now is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 41) and motion to seal (DE 48). The motion for summary judgment was fully briefed. The matter also is before the court on plaintiff's motion in limine (DE 58) and motion for a pretrial conference (DE 60).

**STATEMENT OF THE CASE**

On October 17, 2024, plaintiff filed his § 1983 complaint. On January 14, 2025, the court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and allowed plaintiff to proceed with the following claim: defendants Domanick Smith ("Smith"), Stephen Fonville ("Fonville"), and Correctional Officer Delmar Holder ("Holder") used excessive force against him in violation of the Eighth Amendment to the United States Constitution. See (DE 9). On May 15, 2025, North Carolina Prisoner Legal Services ("NCPLS") was appointed to conduct discovery on plaintiff's behalf pursuant to the court's Standing Order 20-SO-11. See (DE 20). NCPLS then assisted plaintiff with discovery and provided him legal advice. See (DE 23).

On October 6, 2025, plaintiff filed a motion to view video evidence and a motion to take depositions. See (DE 25, 26). Plaintiff next filed a "motion for production to attain video footage." (DE 27). Defendants responded to plaintiff's motions. See (DE 30-32). On October 30, 2025, the court granted plaintiff's motion to view video footage and directed defendants to make arrangements for plaintiff to view the video evidence within fourteen days and to notify the court of compliance. The court denied the remaining motions. Defendants complied with the court's October 30, 2025 order. See (DE 36). On November 10, 2025, plaintiff filed a letter asking the court to direct defendants to "produce the outside Gray Unit Recreational Yard [] footage" for June 4, 2024. (DE 37). Plaintiff asserted that the missing video evidence contained footage of defendants punching him in the face while he was in full restraints. (Id.) In response, defendants informed the court that the North Carolina Department of Adult Correction ("DAC") does not maintain surveillance footage indefinitely, and that the requested video footage was not preserved. See ((DE 51), p. 2).

On December 10, 2025, defendants moved for summary judgment, arguing plaintiff cannot establish an Eighth Amendment violation, and asserted the affirmative defense of qualified immunity. Defendants also filed a statement of material facts in support of their motion for summary judgment and an appendix, which included: a declaration from defendants' counsel; plaintiff's DAC Offender Public Information page; plaintiff's disciplinary infractions; the incident report; excerpts from plaintiff's medical records; documents related to plaintiff's disciplinary proceedings; the DAC's use for force policy; two videos of the use of force incident; and declarations from each defendant. Defendants also filed a motion to seal. Plaintiff responded to defendants' motion for summary judgment, and attached exhibits. See (DE 52); (DE 52-1); (DE

52-2). Defendants replied. See (DE 56). Plaintiff subsequently filed a motion in limine and a motion for a pretrial conference.

## STATEMENT OF FACTS

Plaintiff's complaint involves a use of force incident at Maury Correctional Institution ("Maury") on June 4, 2024. ((DE 1), p. 5). It is undisputed that the incident began when plaintiff refused to leave his recreation cell after his recreation time was over. (Id. p. 6); (DE 44-4), p. 25.) Officers at Maury next assembled a cell extraction team, which included defendants Smith, Fonville, and Holder, and proceeded to plaintiff's cell. ((DE 1), p. 6); (DE 44), p. 1). The use of force incident was captured by a hand-held video camera. See (DE 44-8); (DE 44-9).

When the cell extraction team arrived at plaintiff's recreation cell, an officer gave plaintiff a direct order to submit to handcuffs. (video 1: 00:27-00:35). Plaintiff responded: "Look, I know y'all want to whoop my ass . . . come on." (Id. 00:36-37). The officer next indicated to the camera that plaintiff had refused several direct orders to submit to restraints and explained that OC pepper spray would not be used due to the wind direction and "blow back" on staff. (Id. 00:37-00:00:48). Plaintiff continued to verbally taunt the officers in the background. (Id.) The officer then gave plaintiff one last opportunity to submit to restraints, and plaintiff responded: "Bruh, I'm not cuffing . . . you can beat my a--," and continued to verbally taunt the members of the cell extraction team as they left the area. (Id. 00:54-00:1:23).

When the cell extraction team returned to plaintiff's recreation cell, plaintiff stood at the entrance and continued to verbally taunt the officers. (Id. 4:30-5:00). An officer next opened plaintiff's cell door and the officers entered the cell. (Id. 5:00-5:10). The officers repeatedly instructed plaintiff to stop resisting. (Id. 5:07-5:14). Approximately sixteen seconds after the officers entered plaintiff's cell, plaintiff responded: "I'm not resisting." (Id. 5:13-5:15). When the

officers got plaintiff to the ground, they continued to instruct plaintiff to stop resisting and plaintiff yelled out: "I'm doing it" and "my nuts." (Id. 5:15-5:26). At one point, plaintiff yelled out, "I give up" and then twice said, "I'm sorry." (Id. 5:33-5:48). According to defendant Smith, plaintiff's resistance consisted of plaintiff "wiggling around and moving back and forth" and kicking when Smith was trying to place restraints on him. ((DE 44-10) ¶ 9). An officer next ordered plaintiff to move onto his back, and plaintiff responded: "Ok" and "I'm trying." (Video 1: 5:49-5:56). The officers then repeatedly instructed plaintiff to put his hands behind his back and plaintiff repeatedly stated: "I can't." (Id. 6:08-6:14).

For most of the video, there is an officer standing directly in front of the camera and plaintiff cannot be seen because the remaining officers are on top of him. (Id.) However, at one point, the officers move apart and reveal plaintiff's head on the ground facing the front of the recreation cell. (Id. 6:14-6:18). Shortly thereafter, plaintiff stated "you all beat my ass." (Id. 6:18-6:22). An officer again repeatedly ordered plaintiff to stop resisting, and plaintiff repeatedly responded, "I'm not" and "please," in a high pitch voice. (Id. 6:25-6:30). Defendant Fonville, who was positioned at the front of the cell near plaintiff's head, then kneed plaintiff in the head area three times. (Id. 6:29-6:39). Defendant Fonville claims he delivered the two "knee spears" to plaintiff's right suprascapular nerve after plaintiff attempted to bite Fonville on his left knee and that Fonville used "the inverted finger method" twice after plaintiff continued to resist by wiggling and refusing to put his hands behind his back. ((DE 44-11) ¶ 10). As the officers were placing restraints on plaintiff, plaintiff repeatedly stated, "I'm sorry" and "y'all won." (Video 1: 6:39-7:10). According to plaintiff, the officers assaulted him again as they were escorting him, in full

restraints, to a holding cell.[1] See ((DE 1), p. 6); (DE 52), pp. 1-2). Plaintiff was crying when the officers escorted him to the holding cell. (video 2: 00:00-00:30).

At approximately 1:15 p.m., a nurse conducted a use of force evaluation on plaintiff at Maury's medical clinic. ((DE 47), p. 24). The nurse noted plaintiff was "irritable and uncooperative" and that plaintiff had "several small abrasions which were cleaned and treated." (Id. p. 26). Photographs taken of plaintiff's head and upper body shortly after the use of force incident reflect that plaintiff received injuries to his head, face, and shoulder areas. ((DE 44-4), pp. 26-27). The photographs also reveal plaintiff had blood at the corner of his mouth. (Id.)

Approximately six hours later, a nurse examined plaintiff and noted plaintiff's chief complaint was pain and that he expressed a belief that his wrists were broken. (Id. p. 27). The nurse ordered x-rays of plaintiff's hands, fingers, and skull. (Id. p. 29). The results were normal. (Id. pp. 34-39). Two days later, plaintiff was placed on suicide watch after expressing thoughts of self-injurious behavior. ((DE 47), p. 31). Then on June 11, 2024, plaintiff pleaded guilty to the B-25 disciplinary offense of failing to obey a direct order. (DE 44-6).

## DISCUSSION

I. Motion to Seal

Defendants seek a court order sealing their exhibit which contains plaintiff's medical records, as well as their statement of material facts and memorandum in support of their motion for summary judgment. Local Rule 26.1(a)(1) of this court's Local Rules of Practice and Procedure require that medical records not be open to inspection or copying by any person except the parties and their attorneys. It further requires the filing of any such records to be accompanied by a motion to seal. Based upon the foregoing, defendants' motion to seal is GRANTED as to

---

[1] Defendants submitted two videos of the use of force incident. See (DE 8, 9). There is a break in the two videos as the officers are escorting plaintiff from his recreation cell to the holding cell. (Id.)

their request to seal their exhibit containing portions of plaintiff's medical records, and the Clerk of Court is DIRECTED to maintain (DE 47) under seal. See, e.g., Roberson v. Paul Smith, Inc., No.5:07-CV-284-F, 5:08-CV-40-F, 2010 WL 2332282, at *1 (E.D.N.C. June 9, 2010). The remainder of defendants' motion to seal is DENIED.

## II. Motion for Summary Judgment

### A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

### B. Analysis

Defendants raise the affirmative defense of qualified immunity against plaintiff's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not

demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

1. Official Capacity Claims

To the extent plaintiff brings claims against defendants in their official capacities, an action by a private party to recover money damages from state officials in their official capacities is barred by the Eleventh Amendment. Huang v. Board of Governors of University of North Carolina, 902 F.2d 1134, 1138 (4th Cir. 1990). Thus, the court GRANTS defendants' motion for summary judgment as to plaintiff's claims against defendants in their official capacities.

2. Excessive Force

Plaintiff alleges defendants used excessive force against him in violation of the Eighth Amendment. "[A] prisoner must meet a heavy burden to satisfy the subjective component–that prison officials applied force maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain and restore discipline." Boone v. Stallings, 583 F. App'x 174, 176 (4th Cir. 2014) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (4th Cir. 1986)). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. In determining whether a prison official has acted with "wantonness," relevant factors include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Thomspon v. Virginia, 878 F.3d 89, 99 (4th Cir. 2017); Whitley, 475 U.S. at 321.

Applying the Whitley factors to the instant use of force allegations against defendants and construing the record as a whole in the light most favorable to plaintiff, genuine issues of material

fact preclude summary judgment as to plaintiff's excessive force claim. In particular, crediting plaintiff's version of the events in connection with the video evidence, a jury could conclude defendants used force against plaintiff even after plaintiff attempted to comply with their orders and after plaintiff was placed in restraints when there was no need to use force. See Alexander v. Connor, 105 F.4th 174, 179 (4th Cir. 2024); Thompson v. Commonwealth of Virginia, 878 F.3d 89, 100 (4th Cir. 2017) ("The officers . . . cannot[] argue that Mr. Thompson presented any kind of physical threat, as he was fully restrained with shackles, handcuffs, and a black box."); Love v. Beasley, 788 F. App'x 935, 937 (4th Cir. 2020); Campbell v. Smith, 406 F. App'x 741, 743 (4th Cir. 2010) ("Based on Campbell's version of events giving rise to this litigation, he was in handcuffs and restrained by McClinen when Smith hit him. If this version of events is accepted, a trier of fact could easily conclude that an Eighth Amendment violation occurred."); Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

The court next determines whether defendants are entitled to the affirmative defense of qualified immunity. It is clearly established that the Eighth Amendment forbids the "unnecessary and wanton infliction of pain" against inmates. Whitley, 475 U.S. at 319 (internal quotation marks omitted). Given that a fact finder in this case could find that the alleged force was used in a malicious and sadistic manner to cause harm, a reasonable officer would have known that his conduct violated the law. See Tedder v. Johnson, 527 F. App'x 269, 274 (4th Cir. 2013) ("Johnson therefore cannot claim qualified immunity because malicious and sadistic use of force for the very purpose of causing pain is always in violation of clearly established law. This is not an incorrect

guess in a gray area of law."). (citation omitted). Thus, defendants are not entitled to qualified immunity.

Regarding plaintiff's motion in limine, rulings *in limine* are preliminary and may be subject to change as the trial unfolds. See Luce v. United States, 469 U.S. 38, 41 (1984); see, e.g., Finch v. Covil Corp., 388 F. Supp. 3d 593, 612, n. 14 (M.D.N.C. 2019), aff'd, 972 F.3d 507 (4th Cir. 2020). Accordingly, plaintiff's motion *in liminine* is DENIED as PREMATURE.

**CONCLUSION**

In summary, plaintiff's motion in limine (DE 58) is DENIED as PREMATURE. Defendants' motion to seal (DE 48) is GRANTED in part and DENIED in part. The motion is GRANTED as to (DE 47), and the Clerk is DIRECTED to maintain (DE 47) under seal. The remainder of the motion is DENIED. Defendants' motion for summary judgment (DE 41) is GRANTED as to plaintiff's claims against defendants in their official capacities. The motion (DE 41) is DENIED as to plaintiff's claim against defendants in their individual capacities. This case is REFERRED to United States Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference. Judge Jones will notify the parties how he wishes to proceed. The court APPOINTS North Carolina Prisoner Legal Services ("NCPLS") to represent plaintiff at the settlement conference. See Standing Order 21-SO-11, ¶ 7. The clerk shall send a copy of this order to notify NCPLS of its appointment. In the event the parties do not reach a resolution of this action, further order regarding trial planning and scheduling will follow. Because the court has referred this case for a settlement conference, plaintiff's motion for a pretrial conference (DE 60) is DENIED as MOOT. The Clerk is DIRECTED to amend the court's caption to reflect the full name for the

party plaintiff identified as Officer Holder is Delmar Holder.

SO ORDERED, this the 18 day of August, 2026

TERRENCE W. BOYLE
United States District Judge